IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RONALD SISKEY, | ) | CASE NO. 5:08 CV 887 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

## Introduction

This is an action for judicial review of the final decision of the Commissioner of Social Security denying the applications of the plaintiff, Ronald Siskey, for disability insurance benefits and supplemental security income. The parties have consented to magistrate judge's jurisdiction.

The Administrative Law Judge ("ALJ"), whose decision became the final decision of the Commissioner, found that Siskey had severe impairments consisting of chronic obstructive pulmonary disease and asthmatic bronchitis.[1] The ALJ determined that Siskey did not have an impairment or combination of impairments meeting or equaling one listed in Appendix 1 of the regulations.[2] The ALJ decided that Siskey had the following residual functional capacity:

---

[1] Transcript ("Tr.") at 17.

[2] *Id.*

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to lift or carry 10 pounds occasionally and small objects frequently. He can sit, stand, or walk at least 6 hours in an 8 hour day. He cannot climb ladders, ropes, or scaffolds. He can only occasionally climb stairs or ramps. He must avoid even moderate exposure to fumes, odors, dusts, or gases.[3]

According to the ALJ, the above-quoted residual functional capacity rendered Siskey unable to perform his past relevant work.

Using the above-quoted residual functional capacity, the ALJ applied the medical vocational guidelines in Appendix 2 of the regulations and found that Siskey was not under a disability.[4]

Siskey asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Siskey presents four issues in this case:

- Whether the ALJ's decision that Siskey's pulmonary condition did not meet or equal a listed impairment is supported by substantial evidence;

- Whether the ALJ properly articulated regarding the weight given to the opinion of Siskey's treating physician, Dr. Husain, and properly discounted the weight assigned thereto;

- Whether substantial evidence supports the ALJ's residual functional capacity finding; and.

- Whether the ALJ properly relied on the grids at step five of the sequential evaluation process rather than obtaining the opinion of a vocational expert.

---

[3] *Id.* at 18.

[4] *Id.* at 21.

I conclude that substantial evidence supports the ALJ's finding that Siskey's impairments did not equal a listing. I further conclude that substantial evidence does not support the ALJ's residual functional capacity finding because the ALJ failed to assign weight to the opinions of two treating physicians and failed to give good reasons for the weight assigned to the opinion of a third treating physician. The case, therefore, must be remanded for reconsideration of the residual functional capacity finding.

## Analysis

**1.    Standard of Review**

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "
>
> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[5]

---

[5] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner survives "a directed verdict" and wins.[6] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[7]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

**2.      Section 3.02A of the listing**

Siskey argues that his chronic pulmonary insufficiency meets or equals the listing in § 3.02A of Appendix 1. To qualify for a listing under this section, the impairment must have severity characterized by spirometry test results yielding $FEV_1$ readings equal or less than 1.55 for a person of Siskey's height, 70 inches, without shoes.[8]

The claimant bears the burden of proof at step three of the sequential evaluation process, which involves the determination of whether the impairment meets or equals a listing.[9] To meet a listing, the claimant must show that his impairment meets all of the specified medical criteria; an impairment manifesting only some of the criteria, no matter

---

[6] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06cv403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[7] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

[8] 20 C.F.R. Part 404, Subpart P, Appendix 1, § 3.02A.

[9] *Thacker v. Soc. Sec. Admin.*, 93 F. App'x 725, 727-28 (6th Cir. 2004).

how severe, does not qualify.[10] A claimant can demonstrate equivalency only by medical findings equal in severity to all criteria in the listed impairment.[11]

On this record, Siskey clearly did not meet the listing. The transcript contains two sets of spirometry test results. The first test, administered on February 16, 2004, yielded $FEV_1$ readings of 1.83 before medication and 2.02 after medication.[12] The second set of readings, from October 4, 2006, show 1.93 before medication and 1.94 after medication.[13]

Siskey argues that the severity of his impairment, evidenced by his symptomology and the treatment regimen therefor, substitutes for the absence of qualifying readings in proving equivalency.[14] Equivalency cannot be established without a physician's opinion.[15] Siskey had the burden of proof at this step of the sequential evaluation process[16] but did not supply such an opinion.

---

[10] *Hicks v. Comm'r of Soc. Sec.*, 105 F. App'x 757, 761 (6th Cir. 2004), quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

[11] *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001).

[12] Tr. at 181.

[13] *Id.* at 312.

[14] ECF # 22 at 11.

[15] *Hewett v. Astrue*, No. 2:07CV1038, 2009 WL 825525, at *1 (S.D. Ohio Mar. 27, 2009).

[16] *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999).

Siskey submits, nevertheless, that the ALJ should have obtained a medical opinion as to equivalency and acknowledged as much at the hearing.[17] The ALJ did state, erroneously, that the October, 2006 test results fell within the listing.[18] As Siskey admits,[19] however, this comment came in the context of a mistaken reference to listing § 3.04A for cystic fibrosis, where an $FEV_1$ result of 1.95 or less would meet the listing. Siskey does not have cystic fibrosis.

Operating on this erroneous assumption, the ALJ stated that he "would have to get a medical expert" if Siskey's treating physician did not provide a supplemental report addressing equivalency.[20] Although Siskey's physician did submit a supplemental report, he offered no opinion on equivalency.[21]

Because Siskey did not meet the listing, the ALJ's confusion aside, and the listing contains a single component requiring objective measurement by medical testing, the ALJ was not required to obtain a medical expert.[22] The ALJ gave Siskey the opportunity to

---

[17] ECF # 22 at 11.

[18] Tr. at 75-76.

[19] ECF # 22 at 11.

[20] Tr. at 82-83.

[21] *Id.* at 319-20.

[22] *Lewis v. Astrue*, No. 3:07CV145, 2008 WL 4186325, at *10 (S.D. Ohio Sept. 2, 2008); *Jenkins v. Comm'r of Soc. Sec.*, 1:06CV552 2008 WL 339790, at *7 (S.D. Ohio Feb. 6, 2008). Under these circumstances, the ALJ was entitled to rely upon the signature of the state agency medical consultants on the Disability Determination and Transmittal forms (Tr. at 85, 86) as experts' opinions of no equivalency. *Hewett*, 2009 WL 825525, at *1 n.1.

submit further evidence of equivalency.  Having failed to do so, Siskey did not meet his burden.

**3.      The ALJ's handling of the opinions of the treating physicians.**

The record contains the opinions of three of Siskey's treating physicians – Todd Zacour, D.O. (primary care physician); Masroor Mustafa, M.D. (pulmonologist);[23] and Iftekhar Husain, M.D. (pulmonologist).[24]  All of these physicians offered these opinions in late 2006.

The opinions of Dr. Zacour and Dr. Husain were substantially similar.  Both imposed substantial exertional limitations on lifting, standing, and walking and noted the need for a sit/stand option.[25]  Dr. Mustafa identified no exertional limitations but offered only environmental limitations.[26]

Despite these extensive and contemporaneous opinions by three treating physicians, the ALJ made a determination as to weight with respect to only one of those opinions and provided minimal articulation based upon a misunderstanding of the record.  The ALJ made no assignment of weight with respect to the opinions of Dr. Zacour and Dr. Mustafa.[27]  Under the erroneous assumption that Dr. Husain's opinion was a second opinion from Dr. Mustafa,

---

[23] Tr. at 304-05.

[24] *Id.* at 319-20.

[25] *Id.* at 299-300 (Dr. Zacour), 319-20 (Dr. Husain).

[26] *Id.* at 304-05.

[27] *Id.* at 20.

and noting that the two opinions had inconsistencies, he assigned Dr. Husain's opinion only partial weight.[28]

In *Cross v. Commissioner of Social Security*,[29] I set out in great detail the regulations and case precedents regarding assigning weight to such opinions and articulating the reasons for the weight assigned.[30] I will not repeat that analysis here but, rather, incorporate it by reference.

Needless to say, the ALJ assigned no weight to the opinions of two of the treating physicians and gave an articulation based upon an erroneous premise, the identity of the physician giving the opinion, with respect to the third. Even though the Sixth Circuit has recognized harmless error as a basis for excusing compliance with the weight and articulation requirements,[31] the ALJ's shortcomings here do not constitute harmless error. Two of the treating physicians imposed exertional limitations on standing and walking far in excess of those assigned by the ALJ in his residual functional capacity finding. This case, therefore, must be remanded to give the ALJ an opportunity to properly weigh and articulate with respect to the treating physicians' opinions.

---

[28] *Id.*

[29] *Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724 (N.D. Ohio 2005).

[30] *Id.* at 729-31.

[31] *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 747-48 (6th Cir. 2007).

**4.     Use of the medical-vocational guidelines at step five**

As this case is being remanded, depending upon whether the ALJ adjusts the residual functional capacity finding, the inquiry at step five should proceed with the assistance of a vocational expert.  Despite the inclusion of substantial non-exertional limitations in the residual functional capacity finding, the ALJ decided this case based upon the medical-vocational guidelines in Appendix 2 of the regulations.  This is contrary to the law of the Sixth Circuit as set forth in *Damron v. Secretary of Health and Human Services*[32] and its progeny.

The ALJ and the Commissioner justify the forsaking of the testimony of a vocational expert because Siskey's counsel stipulated that, with environmental limitations, a sufficient number of jobs existed locally and nationally at the light level that Siskey could perform.[33] The ALJ eventually found Siskey capable of sedentary work, a subset of light work, and found the requisite number of jobs using the grids.

Although the ALJ's decision to use the grids is probably defensible given the exertional limitations included in the residual functional capacity finding, that decision cannot stand if greater exertional limitations are incorporated into the residual functional capacity finding as a result of the reconsideration of the opinions of the treating physicians. Two of the three treating physicians opined that Siskey had substantial limitations on his ability to stand and walk and needed a sit/stand option.  Although there may be a substantial

---

[32] *Damron v. Sec'y of Health & Human Servs.*, 778 F.2d 279, 282 (6th Cir. 1985).

[33] Tr. at 79.

number of jobs that a vocational expert could identify even with these greater limitations, these limitations would make this case unsuitable for decision using the grids.[34]

## Conclusion

Based on the foregoing, the Court concludes that the ALJ's finding that Siskey's impairments did not equal a listing has the support of substantial evidence. The ALJ's residual functional capacity finding, however, does not have the support of substantial evidence. The decision of the Commissioner denying Siskey's applications for disability insurance benefits and for supplemental security income is reversed. The case is remanded for reconsideration of the residual functional capacity finding with weight assigned to the opinions of Siskey's treating physicians and good reasons stated for the weight assigned. If the residual functional capacity finding is modified on remand, then the ALJ should reconsider the findings at step five of the sequential evaluation process with the assistance of the testimony of a vocational expert.

For purposes of any potential application for attorney's fees under the Equal Access to Justice Act,[35] the Court concludes that the position of the Commissioner was substantially justified.

---

[34] *Walker v. Chater*, 117 F.3d 1421, 1997 WL 369445, at *6 (6th Cir. 1997) (unreported table decision).

[35] 28 U.S.C. § 2412(d)(1)(A).

IT IS SO ORDERED.

Dated:  August 12, 2009                                         s/ William H. Baughman, Jr.
                                                                United States Magistrate Judge